Good afternoon, Your Honors. May it please the Court. Jared Smith on behalf of Petitioner Johnny Torres, I'd like to reserve two minutes for rebuttal. Your Honors, this is a Convention Against Torture case in which Mr. Torres was kidnapped, beaten, and then threatened at gunpoint by a public official of Belize to leave the country or be killed. The agency Twenty years ago? Twenty-four years ago. Twenty-four years ago? Yeah. Over a personal dispute, right? That's correct. This wasn't a political matter, right? That is correct. So it's a one-sided dispute. One-sided dispute over a romantic entanglement, right? That's what the person who made the threat indicated. How can we say that the board is wrong in concluding that there's no insufficient evidence that this is going to continue to be a threat? Well, Your Honor, the only evidence in the record is that the threat was made and that threat did not have a, it was open-ended, did not have a time limit. Well, but there are different kinds of threats. If you're a snitch for the mob, let's say, just, you know, for organized crime, you can say, well, 20 years later, we'll still remember it. But a private dispute over somebody's, policeman's ex-wife, it's a little hard to say. I mean, you know, if we were sitting as, in lieu of the ALJ, we might say maybe it's continuous, but can we really say it's, the IJ, I'm sorry, could we really say this is error? Your Honor, this court in Hale explicitly said that we can't inject speculation and couple that with, couple that with significant passage of time and put that together and say that the threat is no longer real. So the only evidence in the record right now is the fact that... Was it, was it torture to begin with? Your client didn't go to the hospital, right? That is correct. So... Does that amount to torture? Even putting aside any of the other stuff, even on its own, does that, does that amount to torture? The physical aspect, sir? Yeah. Or any of it. Yes. So, regulations require that we consider both the physical and mental aspects. And so, on the mental aspect, regulations show that, the regulations indicate that threat of imminent death is a form of torture. And in this case, Mr. Torres was threatened at gunpoint to leave or be killed. And that is an imminent threat of death. That's how I think anybody would interpret that. And that's how Mr. Torres interpreted it as well. And as a result, he left the country. So, in assessing the future likelihood of torture, the agency is required by regulation to consider all relevant evidence of past torture inflicted on Mr. Torres, including both mental and physical torture. The IJ's opinion did not consider the mental aspect, the mental pain and suffering that he went through, and did not consider whether that was, under regulation, a form of torture. Should we ask for a remand for the IJ to consider that? At a minimum, yes, sir. On the public official issue, the agency's finding is not supported by substantial evidence. The agency did not make an adverse credibility finding against Mr. Torres. Therefore, his testimony may be sufficient to sustain his burden without corroboration. Well, does he have to make a credibility determination here? In other words, the real credibility, would it not be the individual who claimed to be the police officer or public official? That doesn't discredit Torres. I'm not sure I understand your question. Well, you're talking about the credibility determination the IJ needed to make. And Torres can be believed with respect to the public official, but it's the public official's statement that he was a police officer, and so there was no reason to discredit him with respect to who this person purported to be. That is correct. The only evidence in the record, however, is the fact that Mr. Torres was told by this individual that he was a police officer. Also, this police officer was able to garner three or four other individuals to help him perform this act. It's possible that those people are also police officers. You know, that's speculation, but the only evidence is that he was a police officer. And so discrediting Mr. Torres isn't necessary here. Well, it's not the only evidence. I mean, there was a lack of evidence in that Torres had indicated that this woman that he was dating never made any assertion that she had been married to a police officer or to anyone else for that matter. Isn't that true? That's true, isn't it? That is true. He testified to that. But that is speculation. In Hale, counsel's against that. So in Hale, the applicant in that case held a position or testified that the person who she thought may kill her if she returned held a position in the EPLF government. The court in that case did not require corroboration to prove that he in fact was a government official. Just like in this case, the only evidence is Mr. Torres' testimony that Officer Miguel was a police officer, that Officer Miguel told him that he was a police officer. I mean, other than the fact that whoever did this told him he was a police officer, does your client have any other evidence that in fact this was a police officer? No, he does not, sir. Okay, so one could easily believe him and still not be convinced that this was a police officer. It could be somebody wanting to make the threat credible by saying, hey, I'm a police officer. That is a possibility, sir. I mean, there was no uniform or badge. He never saw him. That's correct, but given the circumstances. He was dating his ex-wife, right? That is what, based off of what Officer Miguel told Mr. Torres, that is true. He has no independent corroboration of that. He was dating a woman, and then this guy jumps out and says, it's my ex-wife, and you better leave the country or I'll kill you. Correct. I would say given the fact that he was kidnapped by multiple people, tied up in a chair in a room, beaten, and later a person came in and pointed a gun at his head, it doesn't seem necessary to then also say, oh, by the way, I'm a police officer, in order to get his compliance. It's likely that Mr. Torres would have reacted the same way if it had been just another individual who made the same type of threat. Maybe, maybe not. Maybe he would go to the police. Maybe this person didn't want him going to the police to complain, so he says, I'm a police officer, so don't try to get help from the police. Anyway, you've got a minute left. Do you want to save it? I'd like to save it for about a second. Okay. We'll hear from the government. Good afternoon. May it please the Court. Jennifer Singer on behalf of the United States. At issue here are two of the elements of a claim for deferral of removal under the Convention Against Torture. The first element is that any torture be inflicted by or with the consent of a public official. And the second element is that such torture is more likely than not to occur in the country of removal. The petitioner had the burden of proving both of those elements, and he has failed to do so here. With regard to the state action requirement, the record evidence simply does not compel the conclusion that Delmar was a police officer. On the one hand, we have facts to indicate that prior to the 1993 incident, petitioner had never seen, never met. Delmar had never even heard of him, let alone heard of the fact that he was a police officer or supposed fact that he was a police officer. And he never saw him or heard from Delmar after the 1993 incident. During this one interaction, Delmar was in plain clothes. He did not wear a badge or wear or display any other clothing or anything indicating or suggesting that he was a police officer. The petitioner was picked up in a cargo van. Petitioner does not allege that the cargo van was a police-type vehicle or had decals or any police equipment inside. It was taken to an unknown location. And petitioner does not allege that the other three individuals who accompanied Delmar even claimed that they, too, were police officers, just Delmar. And on the other hand, all we have is the petitioner's testimony saying that Delmar told him that he was a police officer. And we also have petitioner's testimony acknowledging the fact that Delmar may have been lying on this point in order to show force during his interaction. Weighing those... You don't think a gun's enough? I mean, usually when you've got somebody tied in a chair, pointing a gun is more than enough force. It is threatening. And I mean it. It is, but to make his claim out under the Convention Against Torture, it also needs to show that he is a police officer. And equally plausible under these facts that are in the record, it could be equally plausible that Delmar said he was a police officer in an additional show of force to get the petitioner to stay away from his ex-wife. Or, and like Your Honor said earlier, to also prevent petitioner from perhaps going to the police later if he was going to make a claim against Delmar. We have nothing else. And in the month following the incident, petitioner never saw Evelyn, his ex-girlfriend, never once again saw Delmar, never once again saw these three other individuals. He never made any attempt to talk to anyone to say, wow, was this woman really that I was dating, was she married, was she married to a police officer? There was nothing on the part of petitioner to do any of that. And he remained in Bailey's for one month following the incident. He never saw these people again, and nothing else happened to him. Given these facts and the weighing of the facts, there just simply is not enough evidence to compel the conclusion that Delmar was in fact a police officer. And that state action requirement is a requirement to prove a Convention Against Torture claim. I was curious why this individual was removable. I think there's a misdemeanor domestic violence conviction, and there's also I believe there's a felony marijuana conviction, is that right? The primary conviction that would make him removable would be the drug offense. The parties seem to agree in the first round of proceedings before the immigration judge that it was an aggravated felony and a particularly serious crime, meaning that those convictions would bar him from relief other than deferral of removal under the Convention Against Torture. And that's why that is the only claim before this court today. There was some mention in the briefs, I believe, of an arrest for identity theft, but there's not a conviction for that, is there? Not to my knowledge. And then with regard to the likelihood of future torture, petitioner again simply fails to show that Delmar would more likely than not torture him upon return to Belize. First of all, petitioner admits that he doesn't even know if Delmar is still alive. Secondly, this incident happened in 1993, more than 24 years ago, and petitioner has shown nothing other than having a stale claim. There's no evidence to suggest that Delmar would even know that petitioner would return to Belize, when he would return to Belize, if he did return to Belize, or that any animus Delmar might have against petitioner is he even still harbors it. It's been 23 years. It's just speculation that he would still harbor this jealousy against petitioner for having an affair with his ex-wife 24-plus years ago. I have a somewhat hypothetical question for you in this case. Assume that the petitioner here did, in fact, establish that Delmar was, in fact, a police officer. And I'm not saying that's happened, but just assume that for a moment. Establish he was a police officer in 1993. For his future persecution argument, does he have to confirm that Mr. Delmar Mugel, or whatever his name is, is still a police officer in 2017, or is it enough to say he was simply a police officer once, and so therefore even if he's retired, but still out to get the petitioner, the petitioner's claim would prevail? Assuming that he was a police officer, he would still have to prove a cat claim in two ways under the future fear of torture prong. Either show that he was still a police officer because there needs some kind of state action requirement, or, which is not the case here, that he is a civilian and the government would acquiesce to his torture as a civilian. And I understand that claim is not there, but the fact that he was once a police officer doesn't mean he's effectively always a state actor for the purposes of this case, in your view. No, that's insufficient. It would either, again, prove state action, or that he's a civilian with government acquiescence. So if he was a retired police officer and got his buddies, who were still active in the police department, to rough him up when he returned, that might be an extension, I would take it. Hypothetically, that could be. All hypothetically. Okay, thank you. But again, the likelihood of that happening is just not present here. There's no indication, again, that Delmar is even alive, that he would know a petitioner would return, or that he still harbors this jealousy towards him that would make him act on the threat he set against petitioner 24 years ago. And petitioner relies on the Hiley case a lot to show that it's insufficient to have a mere speculative claim. But at this point, all the evidence we have is just mere speculation that Delmar would harm him. And the Hiley case in particular, which is oftentimes these fear of future persecution or torture claims, there's something in it more than just this happened to me in the past, so therefore I feel like it will happen again to me in the future. In the Hiley case, there was letters from the petitioner's brother and other parties indicating that her would-be torturer was still seeking her out while she was out of the country, and they were going to the family's home. There's nothing here to suggest that, again, that Delmar is even alive, or that he's wondering as to petitioner's whereabouts, or wondering if he left the country, or if he still has any interest in his ex-girlfriend. Given this dearth of evidence, the record just simply does not compel the conclusion that Delmar was a police officer or that there's any future likelihood of torture against the petitioner if he were to return to the leagues. Thank you. Thank you. Thank you. Just a few quick points. Mr. Torres would not have asked for a badge or evidence that Mr. Miguel was, in fact, a police officer. If he believed that he was a police officer, he wouldn't then go to the police and ask if this person was an officer. It's likely that he would run into some of his cohorts and possibly get himself into trouble that way. Might he have had some means of communication, though, with the supposed ex-wife, his girlfriend? I mean, there's nothing in the record that there was any further contact whatsoever. That's right. He said that he didn't contact her and she didn't contact him. And that's a reasonable step to take if your life was just threatened to not speak with that person or not carry on a relationship with that person. I also wanted counsel made a point that the van wasn't a police van, that nobody was wearing uniforms, et cetera, but a local official is a public official whether or not they're acting in official capacity. So the fact that none of them were wearing uniforms or wearing badges or driving a police van really has no relevance as far as proving the fact that he was a public official. On that, we'd ask the Court to grant the petition. Thank you. Cases are used and submitted.
judges: Kozinski, Owens, Settle